IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MACAULAY T. KRUEGER,

                Petitioner,

  v.

MICHAEL MEISNER, Warden,
Red Granite Correctional Institution,

                Respondent.

OPINION and ORDER

13-cv-879-slc

---

On December 30, 2013, State inmate Macaulay T. Krueger filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions in Sheboygan County Case Nos. 10CF307 and 10CF358. *See* dkt. 1. The state has filed an answer (dkt. 15), and both sides have filed briefs (dkts. 18, 33 & 34). On November 4, 2015, the parties consented to magistrate judge jurisdiction over this case and the case was reassigned to me that same day. *See* dkts. 49-52.

Having read the pleadings, the briefs and the records from the state court proceedings, I conclude that petitioner has failed to establish that the state court of appeals unreasonably applied federal law or made an unreasonable determination of fact in rejecting his claims and affirming his convictions. Accordingly, I am dismissing the petition.

BACKGROUND

Macaulay T. Krueger was charged in Sheboygan County Case Nos. 10CF307 and 10CF385 with three counts of causing a child under the age of 13 to view sexually explicit content, in violation of Wis. Stat. § 948.055. The underlying facts and procedural history of the charges were summarized by the Wisconsin Court of Appeals:

> Krueger was convicted following a jury trial of three counts of causing a child under thirteen to view sexually explicit conduct. The charges stemmed from two separate cases that were consolidated for trial.
>
> In the first case, Krueger was accused of twice exposing himself to Tyler W. when Tyler was eleven years old. On the first occasion, Krueger put a condom on his own erect penis in front of Tyler. On the second occasion, Krueger masturbated in front of Tyler.
>
> In the second case, Krueger was accused of exposing himself to Megan H. when Megan was eleven years old. The exposure in that case again involved Krueger putting a condom on his own penis in front of Megan.
>
> The cases first went to trial on November 9, 2010. During direct examination in the State's case-in-chief, Tyler disclosed new details about his contact with Krueger that were not included in the discovery materials from the State. Accordingly, Krueger's counsel moved for a mistrial based upon the prejudicial nature of the new details. The circuit court agreed with counsel and granted a mistrial on both cases.
>
> After the State provided defense counsel with additional discovery materials concerning Tyler's disclosure, Krueger's counsel moved to dismiss both cases on double jeopardy grounds. The circuit court denied the motion in an oral ruling.
>
> The cases proceeded to trial again on December 16 and 17, 2010, at which time the jury found Krueger guilty of all three counts. The circuit court subsequently imposed an aggregate sentence of eight years of initial confinement and twelve years of extended supervision.

*State v. Krueger*, 2013 WI App 55, ¶¶ 2-7, 347 Wis. 2d 549, 830 N.W.2d 722.

After sentence was imposed, Krueger discharged his appointed attorney and filed several *pro se* motions for postconviction relief. He argued, among other things, that (1) the evidence was insufficient to support his convictions; (2) his double jeopardy rights were violated; and (3) he received ineffective assistance of counsel. The circuit court rejected all of Krueger's arguments.

2

On direct appeal, still proceeding *pro se*, Krueger re-asserted his claims of insufficient evidence and double jeopardy, he challenged the severity of his sentence and argued that the circuit court erred in denying his postconviction motions based on ineffective assistance of counsel. Krueger alluded to a number of other errors, including perjury, "Judicial Misruling" and "Corruption of the District Attorney's office, Judge, and court reporter." The Wisconsin Court of Appeals declined to address Krueger's challenge to his sentence for procedural reasons, but rejected his remaining claims, affirming the conviction in an unpublished opinion. *See State v. Krueger*, 2013 WI App 55, 347 Wis. 2d 549, 830 N.W.2d 722. Thereafter, the Wisconsin Supreme Court denied Krueger's petition for review.

Krueger filed another motion for postconviction relief in circuit court. The circuit court denied the motion on the grounds that Krueger was attempting to re-litigate claims that already had been rejected. Krueger appealed this decision, but later withdrew his appeal.

In his federal habeas corpus petition, Krueger contends that he is entitled to relief on the following grounds, several of which overlap: (1) judicial bias/prejudice; (2) discriminatory prosecution; (3) violation of his *Miranda* rights; (4) the evidence against him was insufficient to support his conviction; (5) the conduct at issue was "not sexually explicit"; (6) prosecutorial misconduct; (7) double jeopardy; (8) perjury; and (9) judicial misrulings.[1] *Petition*, dkt. 1, at 5-15.

---

[1] Krueger initially asserted three additional claims: that his conviction does not meet the requirement for registration as a sex offender under 42 U.S.C. § 16911, that a juror engaged in misconduct, and that he was denied effective assistance of trial counsel; Krueger has since withdrawn these claims. Pet.'s Reply Br., dkt. 34, at 3.

3

OPINION

## I. Habeas Corpus Standard of Review

To the extent that Krueger's claims were addressed on the merits by the Wisconsin Court of Appeals, Krueger must show that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential," *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 15 (2013), requiring that state courts be given "the benefit of the doubt." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011). Relief is authorized only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Richter*, 131 S. Ct. at 786. To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1). Alternatively, a petitioner must show that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2).

## II. Sufficiency of the Evidence/Sexually Explicit Conduct

Krueger argues that the evidence against him was insufficient to support a conviction for the charged offense because the conduct at issue was not sexually explicit. Under the due process clause, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). When evaluating after trial whether this standard has been met, " the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (emphasis in original, citation omitted). Challenges to the sufficiency of the evidence raised in a § 2254 petition are therefore subject to a "double dose" of deferential review: the federal court must defer to the state court, which in turn must defer to the jury. *Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2062 (2012) (per curiam). Such challenges rarely succeed.

Using a standard that mirrors *Jackson v. Virginia*, the Wisconsin Court of Appeals considered Krueger's arguments and found that there was ample evidence to support his conviction on three counts of causing a child under 13 to view sexually explicit conduct:

> In reviewing the sufficiency of the evidence to support a conviction, this court may not substitute its judgment for that of

5

the jury unless the evidence, viewed most favorable to the State and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If any possibility exists that the jury could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, this court may not overturn a verdict even if we believe that the jury should not have found guilt based on the evidence before it. *Id*.

To convict a person of causing a child under thirteen to view sexually explicit conduct, the State is required to prove four elements beyond a reasonable doubt: (1) the defendant caused the child to view sexually explicit conduct; (2) that act was intentional; (3) the child was under thirteen years of age; and (4) the defendant acted with the purpose of sexually arousing or gratifying himself or herself. *See* Wis JI—Criminal 2125; Wis. Stat. § 948.055 (2009–10).[]

With respect to the charges involving Tyler, the evidence supports the jury's verdicts as to the first three elements discussed above. According to both Tyler and Krueger himself, Krueger exposed his erect penis to Tyler both in his room during the condom incident and at the YMCA during the masturbation incident. There is no dispute that the exposure was intentional, as Krueger admitted to purposefully showing Tyler the acts. Likewise, there is no dispute that Tyler was eleven years old at the time of both incidents.

The evidence also supports the jury's verdict as to the first three elements of the charge involving Megan. The jury heard evidence from Megan that Krueger exposed his penis while in his room alone with her and later told her to not tell anyone about it. According to Amanda Roden, who did a clinical interview with Megan shortly after the incident was reported, Megan had described Krueger's penis as "pointing straight at her." Again, there is no dispute that Megan was eleven years old at the time of the incident.

Finally, we conclude that the evidence supports the jury's verdicts as to the fourth element of the charges. As noted by the State, the jury heard significant evidence that Krueger had a preoccupation with his penis, which supports the inference that he

committed the acts for sexual gratification.[2] Moreover, in both the condom incidents and the masturbation incident, Krueger either had an erection or touched himself to get to that point. Viewing this evidence in a light most favorable to the State and the convictions, we are satisfied that a jury, acting reasonably, could have found that Krueger acted with the purpose of sexually gratifying himself when performing all three acts.

Although Krueger complains that his act of putting on a condom in front of Tyler and Megan was not sexually explicit conduct, we disagree. Wisconsin Stat. § 948.01(7)(e) defines "sexually explicit conduct" to include "[l]ewd exhibition" of a person's intimate parts. Here, the jury heard evidence from Tyler that Krueger touched his penis to make it erect and evidence from Megan's initial report that Krueger's penis was "pointing straight at her." Accordingly, it was entitled to make a commonsense finding of "lewdness" in Krueger's exhibition of his penis.

*State v. Krueger*, 2013 WI App 55, ¶¶ 10-15, 347 Wis. 2d 549, 830 N.W.2d 722 (footnote omitted)

.

As he did in the state court, Krueger challenges the jury's finding that his exhibition of his penis was "sexually explicit," arguing that there is no evidence that he touched his penis to make it erect in the incident involving Tyler and that there is no evidence that his penis was erect in the incident involving Megan. Pet.'s Br. in Supp. of Pet., dkt. 18, at 6. Krueger is incorrect. As the court of appeals correctly noted, Tyler testified that Krueger touched his penis to make it erect and a forensic counselor testified that when interviewed, Megan told the counselor that Krueger's penis was "pointing straight at her." To the extent that Krueger challenges the testimony given by one of the children, an assessment of witness credibility is "beyond the scope of review" permitted by *Jackson*. *Schlup v. Delo*, 513 U.S. 298, 330 (1995)

---

[2] For example, the jury heard testimony and saw evidence of an email Krueger had sent to a woman he was dating demonstrating a marked preoccupation with his penis and its sexual function. Furthermore, Tyler testified that Krueger consistently would point out to him when he had an erection and would bring up the topic of masturbation often.

7

(discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson*). Giving the necessary deference to the jury's role in assessing credibility, I agree with the court of appeals that the evidence sufficed to support the conclusion that Krueger displayed his penis in a lewd manner, thereby making these displays sexually explicit.

Even if I disagreed with the state appellate court decision– and I don't–Krueger still would not be entitled to federal habeas relief unless he established that the state appellate court's decision was "well outside the boundaries of permissible differences of opinion," *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation marks omitted), or was completely inconsistent with the facts and circumstances of the case. *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002). Krueger has not come close to making that showing. Applying the highly deferential standard of *Jackson v. Virginia*, the court of appeals was well within reason in concluding that Krueger had failed to overcome his heavy burden of showing that no rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt. Further, Krueger has filed to show by clear and convincing evidence that the court of appeals made any unreasonable findings of fact. Accordingly, Krueger is not entitled to relief on this claim.

III. **Double Jeopardy**

Krueger argues that the State violated the prohibition against double jeopardy by subjecting him to a second trial after the court granted his motion for a mistrial in the first. The Wisconsin Court of Appeals rejected this claim, concluding that a second trial was not barred

because the State did not intend to provoke the mistrial. The court made the following findings on this point::

> As noted, Krueger's cases first went to trial on November 9, 2010. The State began its case-in-chief by calling Tyler's mother and father. It then called Tyler to the stand.
>
> During his direct examination, Tyler disclosed new details about his contact with Krueger that were not included in the discovery materials from the State. Specifically, Tyler stated that Krueger gave him "this weird measuring thing," made Tyler measure his own penis, and also measured his penis with the device. The prosecutor followed up with questions about the details of where and how the measuring occurred.
>
> Krueger's counsel moved for a mistrial based upon the prejudicial nature of the new details. In response, the prosecutor indicated that Tyler had "never disclosed this in interviews" and thus the information was not part of the discovery materials. The prosecutor also objected to the proposed mistrial, arguing that the problem could be addressed with a curative instruction to the jury. Ultimately, the circuit court agreed with defense counsel and granted a mistrial on both cases.
>
> The next day, the prosecutor wrote a letter to the circuit court and defense counsel to further explain the circumstances that prompted the mistrial. In it, he explained that during trial preparation, Tyler had made a brief statement about Krueger telling him to measure his penis. The prosecutor explained that he "did not think much of this statement during our preparation" and did not do much, if any, follow-up on the topic. He stated that both he and the assigned detective expressed surprise that Tyler had made the additional statement because he had not done so during his earlier interviews. The prosecutor acknowledged that he should have instructed Tyler to not say anything about the measuring and that he should not have followed up on the topic after Tyler disclosed it at trial. Finally, he noted that he did not inform defense counsel of the late disclosure because he believed the evidence to be inculpatory and did not intend to use it at trial.
>
> After the prosecutor provided defense counsel with this additional information, defense counsel moved to dismiss both cases on double jeopardy grounds based on prosecutorial overreaching. Counsel argued that the prosecutor had made

>multiple statements misrepresenting the fact that he first learned of Tyler's disclosure prior to trial. Counsel maintained that such behavior was unethical and prejudiced Krueger's rights to successfully complete the criminal confrontation at the first trial.
>
>The circuit court subsequently held a hearing on defense counsel's motion. At the conclusion of the hearing, the court did not make a determination as to whether the prosecutor had acted intentionally. However, it did find that Krueger failed to demonstrate that the prosecutor acted with intention or design to provoke a mistrial because his case-in-chief was going badly or because he sought to prejudice Krueger' rights. Accordingly, it denied the motion.

*State v. Krueger*, 2013 WI App 55, ¶¶ 17-23, 347 Wis. 2d 549, 830 N.W.2d 722. The Wisconsin Court of Appeals upheld the circuit court's decision, noting that a second trial is allowed when a mistrial is not provoked by the State's intentional misconduct:

>Both the United States and Wisconsin Constitutions protect against subjecting any person "for the same offense to be twice put in jeopardy." *State v. Hill*, 2000 WI App 259, ¶ 10, 240 Wis. 2d 1, 622 N.W.2d 34. As a general matter, retrial is not barred when a defendant successfully requests a mistrial because, in that situation, "the defendant is exercising control over the mistrial decision or in effect choosing to be tried by another tribunal." *State v. Jaimes*, 2006 WI App 93, ¶ 7, 292 Wis. 2d 656, 715 N.W.2d 669. However, there is an exception to this general rule, which is in dispute in this case.
>
>It is well established that "retrial is barred when a defendant moves for and obtains a mistrial due to prosecutorial overreaching." *Hill*, 240 Wis. 2d 1, ¶ 11, 622 N.W.2d 34. To constitute prosecutorial overreaching, the conduct which induces the defendant to move for a mistrial must satisfy two elements:
>
>(1) The prosecutor's action must be intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and (2) the prosecutor's action was designed either to create another chance to convict, that is, to provoke a mistrial in order to get another "kick at the cat" because the first trial is going badly, or to prejudice the

defendant's rights to successfully complete the criminal confrontation at the first trial, *i.e.*, to harass him by successive prosecutions.

*State v. Copening*, 100 Wis. 2d 700, 714-15, 303 N.W.2d 821 (1981).

"Determining the existence or absence of the prosecutor's intent involves a factual finding, which will not be reversed on appeal unless it is clearly erroneous." *Jaimes*, 292 Wis. 2d 656, ¶ 10, 715 N.W.2d 669. However, whether the circuit court's findings of fact satisfy the constitutional standard is a question of law that this court reviews de novo. *See State v. Badker*, 2001 WI App 27, ¶ 8, 240 Wis. 2d 460, 623 N.W.2d 142.

Here, Krueger appears to take issue with the circuit court's finding that there was no prosecutorial intent or design to provoke a mistrial or to prejudice his rights under the second prong of the analysis. We agree with the State that the record and circumstances support the court's determination. There are several reasons for this conclusion.

First, the prosecutor objected to the proposed mistrial, arguing that the problem could be addressed with a curative instruction to the jury. Given this fact, the circuit court could infer that had mistrial been the prosecutor's goal, he would not have opposed the motion. *See Jaimes*, 292 Wis. 2d 656, ¶ 10, 715 N.W.2d 669 (stating that court may reasonably infer that prosecutor would not oppose mistrial motion if that was his goal).

Second, there is nothing to indicate that the State's case-in-chief was going badly at the point of the mistrial. A review of the testimony shows that all of the witnesses were cooperative with the prosecution and provided significant evidence favoring the State's case. Indeed, the prosecutor indicated in his response to defense counsel's motion that he believed the trial was going well. This is yet another reason why the circuit court could reach its conclusion. *See State v. Quinn*, 169 Wis. 2d 620, 626, 486 N.W.2d 542 (Ct. App. 1992) (noting that where the trial otherwise appeared to be going well for the State, that supported the inference of no intent to provoke a mistrial).

Finally, the circumstances simply do not suggest a situation where the prosecutor was attempting to prejudice Krueger's right

> to complete the criminal confrontation in the first trial by harassing him with a second trial. Again, the mistrial occurred relatively early in the state's case-in-chief. A second trial would have had little advantage for the prosecution, given the need to reschedule all of the witnesses and, in particular, having two child witnesses and their families testify (and in Tyler's case, re-testify).
>
> In the end, the prosecutor admittedly made mistakes in how he handled Tyler's late disclosure. But the circuit court correctly concluded that the circumstances here did not add up to intent or design to provoke a mistrial or to prejudice Krueger's right to complete the first trial. Accordingly, Krueger is not entitled to relief on this claim.

*State v. Krueger*, 2013 WI App 55, ¶¶ 23-31, 347 Wis. 2d 549, 830 N.W.2d 722.

A defendant who moves for a mistrial may not invoke the double jeopardy bar in a second effort to try him unless the conduct giving rise to the mistrial was done with the intent to provoke the defendant into requesting a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982); *see also United States v. Dinitz*, 456 U.S. 667, 611 (1976) (noting that double jeopardy bars a retrial where a motion for mistrial is provoked by "bad-faith conduct by judge or prosecutor") (quoting *United States v. Jorn*, 400 U.S. 475, 485 (1971)). Applying this rule, the state trial court found as a matter of fact that the prosecutor did not act in bad faith or intend to cause a mistrial; the court of appeals affirmed this finding. This finding is presumed correct for purposes of federal habeas corpus review unless Krueger presents clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

Krueger asserts that he has such evidence, namely, evidence that the Sheboygan County District Attorney has a "pattern" of disclosing evidence for the first time at trial and prompting a mistrial when it looked like the case was headed for acquittal. Pet.'s Br. in Supp., dkt. 18, at

8. Krueger claims that he was prepared to call his attorney to testify to this fact at a postconviction hearing in his case but the circuit judge would not allow him. Even assuming Krueger could present evidence to support his claim about the district attorney, he does not appear to have any evidence to show that the assistant district attorney who prosecuted *his* case was acting pursuant to this pattern. Moreover, Krueger's proffer would not rebut two key facts found by the court of appeals: 1) the prosecutor objected to the mistrial, and 2) the state's case was in the early stages and going well at the time of the disclosure. Both of these facts reasonably support the court of appeals' conclusion that the prosecutor did not intend to provoke a mistrial or prejudice Krueger's rights. Under these circumstances, Krueger fails to show that the state court's decision resulted in an objectively unreasonable application of United States Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). Therefore, Krueger is not entitled to habeas relief on this claim.

### IV. Perjury/Prosecutorial Misconduct

Krueger contends that the prosecutor permitted some of the witnesses to present perjured testimony at his trial. Pet.'s Br. in Supp., dkt. 18, at 11-12. To be entitled to a new trial on the basis of the prosecution's use of perjured testimony, the defendant must establish that: 1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 269-71 (1959). The Wisconsin Court of Appeals found that Krueger had failed to present any evidence of perjury. *State v. Krueger*, 2013 WI App 55, ¶16, 347 Wis. 2d 549, 830 N.W.2d 722. Having reviewed Krueger's briefs and the

13

records from the state court proceedings, I am satisfied that this finding is not unreasonable. In support of his perjury argument, Krueger merely identifies various discrepancies or inconsistencies between what certain witnesses said either at trial or in pretrial statements. However, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) (quoting *United States v. Griley*, 814 F.2d 967, 971 (7th Cir. 1987)). Moreover, Krueger had an opportunity to explore these discrepancies during cross-examination. *See United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995) (noting that defendant's ability to expose alleged perjury on cross-examination is factor weighing against new trial). Krueger has failed to meet his burden of showing that the court of appeals adjudicated his claim in a manner that was contrary to or inconsistent with established federal law.

Krueger also contends that the trial judge's brother, an assistant district attorney, threatened Tyler's mother that her parental rights to Tyler would be terminated if she did not testify against Krueger and that she changed her story as a result. All Krueger offers to support this claim, however, is a vague hearsay statement from Tyler's mother. *See* Fed. Hab App. 18-20, attached to Pet.'s Br. in Supp., dkt. 18, at 18-20. This inadmissible evidence is insufficient to support petitioner's serious allegation of perjury and prosecutorial misconduct.

### V.  Krueger's Remaining Claims:  *Miranda* Violation, Discriminatory Prosecution and Judicial Bias/Misrulings

The state court of appeals did not discuss any of these claims except for this single sentence: "To the extent we have not addressed an argument raised by Krueger on appeal, the argument is deemed rejected." *State v. Krueger*, 2013 WI App 55, n. 4. The Supreme Court has

14

held that, when a state court order addresses some but not all of a defendant's claims, there is a rebuttable presumption that the state court adjudicated the claim on the merits. *Johnson v. Williams*, 573 U.S. ___, 133 S. Ct. 1088, 1094 (2013) (citing *Harrington v. Richter*, 562 U.S. 86 (2011)). Krueger does not attempt to rebut this presumption; instead, he takes the position that the claims *were* adjudicated on the merits. Reply Br., dkt. 34, at 4. Accordingly, I shall review these claims in accordance with § 2254(d).

The state appellate court's adjudication of these claims was neither contrary to nor an unreasonable application of clearly established federal law. Krueger fails to support his *Miranda* claim with any evidence establishing that he was in custody at the time he was questioned; he fails to support his claim of discriminatory prosecution with any evidence that his prosecution was motivated by a discriminatory purpose; and he fails to present any evidence supporting his claim that the judge in his case said that his brother's alleged threat to Tyler's mother "did not affect the trial." Given the lack of evidence offered to support any of these claims, it was not unreasonable for the court of appeals to reject them summarily.

VI. **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*,

15

529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although Rule 11 allows this court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I find that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

(1) The federal habeas corpus petition filed by Macaulay T. Krueger is DENIED and this case is DISMISSED with prejudice.

(2) A certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 20th day of November, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge